# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# LAFAYETTE DIVISION

| | |
|---|---|
| **AURELIAN GUNNER** | **CASE NO. 6:20-CV-01490** |
| **VERSUS** | **JUDGE JUNEAU** |
| **COMMISSIONER OF SOCIAL SECURITY** | **MAGISTRATE JUDGE CAROL B. WHITEHURST** |

## REPORT AND RECOMMENDATION

Before the Court is an appeal of the Commissioner's finding of non-disability. Considering the administrative record, the briefs of the parties, and the applicable law, it is recommended that the Commissioner's decision be affirmed.

## Administrative Proceedings

Claimant, Aurelian Gunner, fully exhausted his administrative remedies before filing this action in federal court. He filed an application for disability insurance benefits, alleging disability beginning on August 31, 2016. His application was denied. He then requested a hearing, which was held on March 5, 2020 before Administrative Law Judge Monica Anderson. (Rec. Doc. 10-1, p. 29). The ALJ issued a decision on July 14, 2020, concluding that Claimant was not disabled within the meaning of the Social Security Act from the claimed disability onset date through the date of the decision. (Rec. Doc. 10-1, p. 13-23). Claimant requested that the Appeals Council review the ALJ's decision, but the Appeals Council found no basis

for review. (Rec. Doc. 10-1, p. 4). Therefore, the ALJ's decision became the final decision of the Commissioner for the purpose of judicial review. *Higginbotham v. Barnhart*, 405 F.3d 332, 336 (5th Cir. 2005). Claimant then initiated this action, seeking review of the Commissioner's decision.

## Summary of Pertinent Facts

Claimant was born on April 4, 1987. He was 29 years old on the alleged disability onset date and at the time of the ALJ's decision, he was 33 years old. (Rec. Doc. 10-1, p. 34). Claimant has a high school degree, is able to perform basic math, and is able to read. (Rec. Doc. 10-1, p. 34). He was employed as an equipment technician for approximately two to three years and then as a purchasing agent for approximately two years. (Rec. Doc. 10-1, p. 35-36). He alleged that he has been disabled since August 31, 2016, due to back and left sided pain resulting from a car accident in which he was hit from behind at a red light and a subsequent work injury. (Rec. Doc. 10-1, p. 37; 41). Claimant testified that he can only sit for ten minutes and stand for five to ten minutes before he has to move around due to the pain. (Rec. Doc. 10-1, p. 39-40). Claimant was represented by an attorney at the ALJ hearing. He is now proceeding *pro se*. Claimant's medical records reveal the following pertinent history:

- November 8, 2016 Lumbar MRI revealed an essentially normal lumbar spine with mild intervertebral disc desiccation at L3-4. (Rec. Doc. 10-1, p. 244).

- December 27, 2017 Lumbar MRI showed slight straightening of normal lumbar lordosis and mild bulging at L3-4 and L4-5. (Rec. Doc. 10-1, p. 270).

- Claimant treated with Dr. Lon Barrone and Dr. Kevin Lasseigne at Louisiana Orthopaedic Specialist from September 2016 through July 2018. (Rec. Doc. 10-1, p. 273-315). He complained of lower back pain radiating into his left hip, buttocks, and left lower extremity, with numbness, tingling, and weakness in both feet, and pain he rated at 9/10. He complained of pain while walking, sitting, and standing. The results of all his physical examinations were essentially normal with normal muscle strength. Dr. Barrone and Dr. Lasseigne treated Claimant conservatively with medication and physical therapy. At one visit in July 2017, Dr. Lasseigne noted that Claimant had called him intermittently over the weekend and during afterhours to "make [him] aware of the different aches and pains that he is still experiencing." (Rec. Doc. 10-1, p. 275). Claimant was also being treated by a psychiatrist pursuant to his workers' compensation claim. On July 28, 2017, Dr. Lasseigne noted that Claimant was capable of working in a sedentary to light duty status. Dr. Lasseigne wanted him to see a pain management physician and assured him there was nothing concerning in his physical examination. (Rec. Doc. 10-1, p. 276-77). Approximately one year later, in July 2018, Claimant returned with continuing low back pain, but all physical findings remained normal. Dr. Baronne recommended that he follow up as needed and continue chronic management of lumbar discomfort. (Rec. Doc. 10-1, p. 279).

- March 20, 2017 – Dr. Kevin Lasseigne's physician's assistant follow up visit. The impression was lower back pain which was muscular in origination that was 60-70% improved. Since he had returned to baseline pain levels and was not a surgical candidate, Claimant wished to proceed with injection therapy. On May 12, 2017, Dr. Lasseigne performed a selective nerve root injection at L4. (Rec. Doc. 10-1, p. 254-266).

- Dr. Lasseigne referred Claimant to Lafayette Bone and Joint Clinic for pain management. Claimant treated with Dr. Hodges from August 2017 through November 2018. (Rec. Doc. 10-1, p. 333-62). Dr. Hodges prescribed medication and physical therapy and placed Claimant on a no work pending treatment status. On March 29, 2018, Dr. Hodges indicated that Claimant would be limited in the future to sedentary activities. (Rec. Doc. 10-1, p. 353). By August 15, 2018, Dr. Hodges felt that Claimant

3

- could handle light to medium duty. He encouraged him to be out and about and to increase his activities as much as possible. (Rec. Doc. 10-1, p. 356).

- Claimant treated at Teche Action Clinic from August 2017 through April 2019. (Rec. Doc. 10-1, p. 363-88). He was prescribed medication and physical therapy for back pain.

- From January through August 2018, Claimant treated with Dr. James McAbee, psychiatrist for diagnoses of somatic symptom disorder with predominant pain and adjustment disorder with mixed anxiety and depressed mood. (Rec. Doc. 10-1, p. 320-29). In March 2018, Dr. McAbee agreed that Claimant was capable of returning to work and that he was not disabled from a psychological perspective. (Rec. Doc. 10-1, p. 325).

- Dr. Jerry Thomas, the state agency physician, found following exam and review of the medical history that Claimant was capable of performing light duty with certain exertional limitations. (Rec. Doc. 10-1, p. 64-66). Upon reconsideration, Dr. Timothy Honigman agreed. (Rec. Doc. 10-1, p. 80-82).

Following the hearing and after considering Claimant's medical records, the ALJ found that Claimant has the residual functional capacity to perform light duty work, with some restrictions, and that he was capable of performing past relevant work. Therefore, the ALJ found that Claimant was not disabled. (Rec. Doc. 10-1, p. 13-23). Claimant now seeks reversal of the Commissioner's adverse ruling.

## Analysis

### A. Standard of Review

Judicial review of the Commissioner's denial of disability benefits is limited to determining whether substantial evidence supports the decision and whether the proper legal standards were used in evaluating the evidence. *Villa v. Sullivan*, 895

4

F.2d 1019, 1021 (5th Cir. 1990); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995). "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983). Substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will only be found when there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Id*. (citations omitted).

If the Commissioner's findings are supported by substantial evidence, they are conclusive and must be affirmed. 42 U.S.C. § 405(g); *Martinez v. Chater*, 64 F.3d at 173. A court must carefully examine the entire record but refrain from re-weighing the evidence or substituting its judgment for that of the Commissioner. *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988); *Villa v. Sullivan*, 895 F.2d at 1022. Conflicts in the evidence and credibility assessments are for the Commissioner to resolve, not the courts. *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985); *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991). Four elements of proof are weighed by the courts in determining if substantial evidence supports the Commissioner's determination: (1) objective medical facts, (2) diagnoses and opinions of treating and examining physicians, (3) the claimant's subjective evidence of pain and

5

disability, and (4) the claimant's age, education and work experience. *Wren v. Sullivan*, 925 F.2d at 126.

**B.      Entitlement to Benefits**

The Disability Insurance Benefit program provides income to individuals who are forced into involuntary, premature retirement, provided they are both insured and disabled, regardless of indigence. See 42 U.S.C. § 423(a). See also *Smith v. Berryhill*, 139 S.Ct. 1865, 1772 (2019). A person is disabled "if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A claimant is disabled if his physical or mental impairment or impairments are so severe that he is unable do his previous work and considering his age, education, and work experience, cannot participate in any other kind of substantial gainful work that exists in significant numbers in the national economy, regardless of whether such work exists in the area in which the claimant lives, whether a specific job vacancy exists, or whether the claimant would be hired if he applied for work. 42 U.S.C. § 1382c(a)(3)(B).

**C.      Evaluation Process and Burden of Proof**

A sequential five-step inquiry is used to determine whether a claimant is disabled. The Commissioner must determine whether the claimant (1) is currently

working; (2) has a severe impairment; (3) has an impairment listed in or medically equivalent to those in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) is able to do the kind of work he did in the past; and (5) can perform any other work. 20 C.F.R. § 404.1520.

Before going from step three to step four, the Commissioner evaluates the claimant's residual functional capacity by determining the most the claimant can still do despite his physical and mental limitations based on all relevant evidence in the record. 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 404.1545(a)(1). The claimant's residual functional capacity is used at the fourth step to determine if he can still do his past relevant work and at the fifth step to determine whether he can adjust to any other type of work. 20 C.F.R. § 404.1520(e).

The claimant bears the burden of proof on the first four steps; at the fifth step, however, the Commissioner bears the burden of showing that the claimant can perform other substantial work in the national economy. *Graves v. Colvin*, 837 F.3d 589, 592 (5th Cir. 2016); *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994). This burden may be satisfied by reference to the Medical-Vocational Guidelines of the regulations, by expert vocational testimony, or by other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987). If the Commissioner makes the necessary showing at step five, the burden shifts back to the claimant to rebut this finding. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005); *Fraga v. Bowen*, 810

F.2d at 1302. If the Commissioner determines that the claimant is disabled or not disabled at any step, the analysis ends. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994), cert. den. 914 U.S. 1120 (1995) (quoting *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987)).

### D. The ALJ's Findings and Conclusions

The ALJ determined at step one that Claimant has not engaged in substantial gainful activity since August 31, 2016. (Rec. Doc. 10-1, p. 16). This finding is supported by substantial evidence in the record.

At step two, the ALJ found that Claimant has the following severe impairments: disorders of the spine. (Rec. Doc. 10-1, p. 16). This finding is supported by substantial evidence in the record.

At step three, the ALJ found that Claimant has no impairment or combination of impairments that meets or medically equals the severity of a listed impairment. (Rec. Doc. 10-1, p. 17). Claimant does not challenge this finding.

The ALJ determined that Claimant has the residual functional capacity to perform light work with several restrictions. (Rec. Doc. 10-1, p. 17-21).

At step four, the ALJ found Claimant is capable of performing his past relevant work as a purchasing clerk, sedentary but performed at the light to medium level. (Rec. Doc. 10-1, p. 21). Therefore, the ALJ did not proceed to step five.

### E. The Allegations of Error

Claimant, who is proceeding *pro se*, did not specifically challenge any of the ALJ's findings. Rather, Claimant's brief states his explanation of the underlying car accident and work accident which allegedly caused his injuries and that he continues to suffer from lower back and left side pain. (Rec. Doc. 11). The Court interprets Claimant's position as a challenge to the ALJ's determination of his residual functional capacity and that Claimant can perform past relevant work.

### F. Whether the ALJ properly determined Claimant's RFC.

The Fifth Circuit summarized the applicable law as follows:

> First, SSR 96–8p provides that a residual functional capacity (RFC) "is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." 1996 WL 374184, *1 (S.S.A.1996). "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." *Id.* at *2. "The RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." *Id.* at *3. "However, without the initial function-by-function assessment of the individual's physical and mental capacities, it may not be possible to determine whether the individual is able to do past relevant work...." *Id.* RFC involves both exertional and nonexertional factors. Exertional capacity involves seven strength demands: sitting, standing, walking, lifting, carrying, pushing, and pulling. *Id.* at *5. "Each function must be considered separately." *Id.* "In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis...." *Id.* at *7. The RFC assessment must include a resolution of any inconsistencies in the evidence. *Id.*
>
> Second, SSR 96–9p also provides that

9

> [i]nitially, the RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to perform work-related activities.... The impact of an RFC for less than a full range of sedentary work is especially critical for individuals who have not yet attained age 50. Since age, education, and work experience are not usually significant factors in limiting the ability of individuals under age 50 to make an adjustment to other work, the conclusion whether such individuals who are limited to less than the full range of sedentary work are disabled will depend primarily on the nature and extent of their functional limitations or restrictions.
>
> 1996 WL 374185, *2 (S.S.A.1996). SSR 96–9p also defines exertional capacity as the aforementioned seven strength demands and requires that the individual's capacity to do them on a regular continuing basis be stated.[2] *Id.* at *5.
>
> *Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001).

The ALJ found that Claimant has the residual functional capacity (RFC) to perform light work with some lifting and movement restrictions. The ALJ specifically considered the medical records summarized above and Claimant's testimony. The medical records show that Claimant's lumbar MRI results were normal and all of his physical examinations by all treating physicians were normal. He treated only conservatively with medication and physical therapy, and a nerve root injection. Surgery was specifically excluded. In fact, the medical records offer very little evidence of objective medical findings supporting Claimant's ongoing complaints of severe pain. Claimant's treating doctors, Dr. Lasseigne and Dr. Hodges, both opined that Claimant could return to work in a light duty capacity. (Rec. Doc. 10-1, p. 276-77; 356). The ALJ properly found that Claimant could return

to work in a light duty capacity, subject to certain physical limitations indicated by the functional capacity exam. (See Rec. Doc. 10-1, p. 20; 65-66). Claimant did not meet his burden to show that he was unable to perform light duty work as indicated by the state agency physicians and his own treating physicians.

### G. Whether the ALJ properly found that Claimant is capable of performing past relevant work.

The ALJ found that Claimant is capable of performing his past relevant work as a purchasing clerk, a job which he had for about two years prior to his alleged onset date. The vocational rehabilitation expert testified at the hearing that a claimant with the same restrictions, age, education, and work experience could perform this job as it was classified by DOT, but not as Claimant had performed it at his specific job in the past. In addition, Claimant is capable of performing jobs including marker, cleaner, and ticket taker, each of which existed in significant numbers in the national economy. (Rec. Doc. 10-1, p. 51-52). The ALJ further found, based on the vocational expert's testimony, that Claimant could make successful adjustment for this other work. The Court finds no error in the ALJ's assessment, which is supported by the record.

### Conclusion and Recommendation

For the foregoing reasons, this Court recommends that the Commissioner's decision be AFFIRMED.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from receipt of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen days after receipt of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of receipt, or within the time frame authorized by Fed. R. Civ. P. 6(b) shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error.[1]

Signed in Lafayette, Louisiana, this 7th day of September, 2021.

_____
CAROL B. WHITEHURST
UNITED STATES MAGISTRATE JUDGE

---

[1] See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996) (en banc), superseded by statute on other grounds, 28 U.S.C. § 636(b)(1).